UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JECOINA VINSON,

                        Petitioner,

     *- against -*

WILLIAM BROWN, Superintendent, Eastern
Correctional Facility,

                     Respondent(s).

07 Civ. 2972 (VB) (PED)

REPORT AND
RECOMMENDATION

TO:   THE HONORABLE VINCENT L. BRICCETTI,
       UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Jecoina Vinson ("Petitioner"), seeks by his *pro se* petition a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254.  On December 10, 1998, Petitioner was convicted in Westchester

County Court, after a trial by jury, of one count of murder in the second degree (depraved

indifference murder) and one count of gang assault in the first degree (Smith, J.).  He was

sentenced on April 6, 1999 to concurrent terms of sixteen years to life imprisonment on the

murder conviction, and five to ten years imprisonment on the assault conviction.  This petition

comes before me pursuant to an Order of Reference dated December 18, 2006 (Docket No. 3),

which was reassigned to me on January 12, 2009 (Docket No. 21).  For the reasons set forth

below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND[1]

---

[1] Unless otherwise indicated, the information contained in this section is taken from
Respondent's Affidavit in Opposition to Petition for Writ of *Habeas Corpus* (hereinafter "Resp't
Aff.") (Docket No. 7) and the Brief for Respondent (hereinafter "Br. for Resp't") (attached to
Resp't Mem. of Law & R. of Exs. (hereinafter "Resp't Mem."), at Ex. 7 (Docket No. 8)).  All
exhibits cited within this Report and Recommendation are attached to Resp't Mem. (Docket No.
8).

A.      **The Crime**

On October 3, 1997 at approximately 3:25 p.m., brothers Augustine and Angel Mejia

walked to a bus stop on Riverdale Avenue in Yonkers, New York.  They were suddenly attacked

by a group of at least four men, including Petitioner.  The brothers were unarmed and did not

know the attackers.  The attackers punched, kicked, and stomped on the brothers.  Eyewitnesses

testified at trial that Petitioner participated in this group assault by forcefully kicking Angel

several times in the head, as well as by kicking, punching, and otherwise beating both brothers as

they lay on the ground.

After about five to ten minutes, police arrived at the scene and the attackers fled.

Although Augustine was conscious, Angel was not.  Police observed a large puddle of blood on

the ground underneath Angel's head.  Paramedics arrived shortly thereafter, attempted to

resuscitate Angel, intubated him, and transported him by ambulance to Saint Joseph's Hospital.

He went into cardiac arrest in the emergency room and later that evening was officially declared

brain dead and removed from a ventilator.  The medical examiner testified that Angel died from

blunt force trauma to the head and neck, which caused a tear in a major artery supplying blood to

his brain, and a resulting hemorrhage.

B.      **The Arrest, the Indictment, and the Trial**

Petitioner was later arrested and charged by indictment with one count of murder in the

second degree, in violation of N.Y. Penal Law § 125.25(2) (depraved indifference murder),[2] one

count of manslaughter in the first degree, in violation of N.Y. Penal Law § 125.20(1) (intentional

---

[2] "A person is guilty of murder in the second degree when . . . [u]nder circumstances
evincing a depraved indifference to human life, he recklessly engages in conduct which creates a
grave risk of death to another person, and thereby causes the death of another person."  N.Y.
Penal Law § 125.25(2).

manslaughter),[3] and one count of gang assault in the first degree, in violation of N.Y. Penal Law § 120.07.[4] (Ex. 1). After the state presented its medical and eyewitness testimony, Petitioner and three other witnesses testified for the defense. The non-party witnesses testified that they were present and did not observe Petitioner attacking either brother. Petitioner also testified that he was present as an onlooker and did not participate in the attack.

The court instructed the jury not to consider the manslaughter charge if it found Petitioner guilty of the murder charge. (Tr., at 1199-1200; see also id. at 1080-84). The jury returned a verdict on December 10, 1998 finding Petitioner guilty of the murder and gang assault offenses. (Id. at 1240-42).

## C.   The Motion to Set Aside the Verdict and the Sentencing Proceedings

After the jury returned its verdict, defense counsel[5] moved to set aside that verdict pursuant to N.Y. Crim. Proc. Law § 330.30[6] on the grounds that:

(1)   newly discovered evidence showed that Petitioner was present but did not participate in the attack;

(2)   the evidence was legally insufficient to support the conviction;

---

[3] "A person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.20(1).

[4] "A person is guilty of gang assault in the first degree when, with intent to cause serious physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person." N.Y. Penal Law § 120.07.

[5] Petitioner was represented by two trial attorneys: William Scott, Esq. ("Scott") during pretrial proceedings and Michael Keesee, Esq. ("Keesee") during pretrial proceedings and trial. (See Pet'r Mem. in Supp. of Pet. for a Writ of Habeas Corpus (hereinafter "Pet'r Mem."), at 12 (Docket No. 16); Affirmation in Opp'n to Mot. to Vacate J. of Conviction, at 2 (Ex. 12)).

[6] "At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof . . . ." N.Y. Crim. Proc. Law § 330.30.

3

     (3)     the jury failed to follow the judge's instructions regarding the time to begin their deliberations;

     (4)     a juror fell asleep;

     (5)     a juror read a newspaper article about the trial; and

     (6)     a witness's demonstration of how Petitioner used his foot to stomp on Angel's head was prejudicial.

(See Ex. 2).  By written decision, the trial court denied the motion.  (Ex. 5).  Petitioner was sentenced on April 6, 1999 to concurrent terms of imprisonment of sixteen years to life on the murder conviction and five to ten years on the assault conviction.

**D.**     <u>**The Direct Appeal**</u>

     Petitioner, through his appellate counsel,[7] appealed his conviction to the New York State Appellate Division, Second Department, on the following grounds:

     (1)     the verdict was against the weight of the evidence; and

     (2)     the evidence was legally insufficient to support the conviction.[8]

(See Br. of Def.-Appellant (Ex. 6)).  The Second Department affirmed the judgment in a written decision on May 23, 2005.  People v. Vinson, 794 N.Y.S.2d 919 (App. Div. 2005).  Petitioner sought leave to appeal to the New York Court of Appeals, and leave was denied on December 23, 2005.  People v. Vinson, 6 N.Y.3d 760 (2005).  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.  (See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, at 3 (hereinafter "Pet.") (Docket No. 2)).

**E.**     <u>**The State Collateral Proceedings**</u>

     **1.**     <u>*The § 440.10 Motion*</u>

     On or about March 30, 2007, Petitioner, proceeding *pro se*, filed a motion in Westchester

---

[7] Petitioner was represented by different counsel on appeal.

[8] As discussed below, Petitioner also raised a legally insufficient evidence claim in his § 440.10 motion.

4

County Court to set aside the judgment of his conviction pursuant to N.Y. Crim. Proc. Law §

440.10[9] on the following grounds:

(1)   ineffective assistance of counsel for Scott's failure to move to dismiss the indictment for charging "unlawful[ ] twin counts" alleging inconsistent mental states, (Aff. in Supp. of Mot. to Vacate J. of Conviction, at ¶ 5 (Ex. 11); see also Mem. of Law in Supp. of Mot. To Vacate J. of Conviction, at 3 (Ex. 11));

(2)   ineffective assistance of counsel for Scott's failure to move to dismiss the indictment on the ground that the evidence presented to the grand jury was legally insufficient to support the murder and manslaughter counts, (see Aff. in Supp. of Mot. to Vacate J. of Conviction, at ¶ 5);

(3)   ineffective assistance of counsel for Scott's failure to communicate a plea offer of five-to-ten years to Petitioner, (see id. ¶ 6);

(4)   ineffective assistance of counsel for Keesee's failure to investigate, interview, and call witnesses to testify, (see id. ¶¶ 21-22);

(5)   ineffective assistance of counsel for Keesee's failure to move for a trial order of dismissal on the murder charge, (see id. ¶¶ 7, 26); and

(6)   the evidence was legally insufficient to support the murder conviction, (see id. ¶¶ 24-25).

The motion was denied on May 23, 2007. (May 23, 2007 Decision & Order (Ex. 13)). The

Second Department denied leave to appeal on January 30, 2008. (See Pet'r Mem., at 2; Decl. in

Opp'n to Am. Pet. for Writ of Habeas Corpus, at 6 (Docket No. 20)).

### 2.   *The* **Error Coram Nobis** *Application*

On or about October 2, 2007, Petitioner, proceeding *pro se*, moved before the Second

Department for a writ of *error coram nobis* on the following grounds:

(1)   ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel claims on direct appeal; and

(2)   ineffective assistance of appellate counsel for failure to communicate with Petitioner.

(See Docket No. 10). The Second Department denied Petitioner's application on December 26,

---

[9] "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ." N.Y. Crim. Proc. Law § 440.10(1).

2007. <u>People v. Vinson</u>, 847 N.Y.S.2d 858 (App. Div. 2007).  Leave to appeal to the New York

Court of Appeals was denied on April 10, 2008.  <u>People v. Vinson</u>, 10 N.Y.3d 845 (2008).

**F.      The *Habeas Corpus* Proceedings**

     **1.      *The Original Petition***

By petition dated March 15, 2007, Petitioner filed a petition for a writ of *habeas corpus*

setting forth two claims that he indicated he recently raised in a § 440.10 motion.[10]  (<u>See</u> Pet., at

6-7).  Specifically, Petitioner argued:

     (1)    he received ineffective assistance of trial counsel for failure to "dismiss the charge of depraved indifference murder because of legally insufficient evidence," (Pet., at 6); and

     (2)    there was legally insufficient evidence to support the murder conviction, (<u>id.</u> at 7).

     **2.      *The Amended Petition***

On September 7, 2007, Petitioner requested leave to amend his petition to "include facts

that relate to" the ineffective assistance of counsel claim and to include other arguments he

intended to raise in an *error coram nobis* application.  (Docket No. 11).  Petitioner also

requested a stay be ordered and the proceeding placed into abeyance pending the outcome of the

state court proceedings.  (<u>Id.</u>)  Magistrate Judge Fox granted Petitioner's requests and accepted

for filing his amended Petition.  (Docket No. 12).  On May 7, 2008, Petitioner notified the Court

that the New York Court of Appeals denied his leave to appeal.  He also requested and was

granted an extension of time in which to file a memorandum in support of his amended petition.

(Docket No. 13).  Petitioner's subsequently filed memorandum, however, appears to argue not

only the claims indicated in his original and amended petitions, but all arguments he raised in his

---

[10] The petition was timely filed.  <u>See</u> 28 U.S.C. § 2244(d)(1)-(2).

6

§ 440.10 and *error coram nobis* petitions.  (See Docket No. 16).  Because all of the claims

Petitioner now argues have been exhausted and addressed by Respondent in its opposition

papers, I treat Petitioner's memorandum as a further request to amend his petition and I grant

such a request.  Accordingly, Petitioner now raises the following claims on federal *habeas*

review:

   (1)   ineffective assistance of trial counsel for Scott's failure to move to dismiss
         the indictment on the ground that it charged two counts with inconsistent
         mental states;

   (2)   ineffective assistance of trial counsel for Scott's failure to move to dismiss
         the indictment on the ground that the evidence presented to the grand jury
         was legally insufficient to support the murder and manslaughter counts;

   (3)   ineffective assistance of trial counsel for Scott's failure to communicate a
         plea offer of five-to-ten years to Petitioner;

   (4)   ineffective assistance of trial counsel for Keesee's failure to investigate,
         interview and call witnesses to testify;

   (5)   ineffective assistance of trial counsel for Keesee's failure to move for a trial
         order of dismissal on the murder charge;

   (6)   the evidence was legally insufficient to support the murder conviction;

   (7)   ineffective assistance of appellate counsel for failure to raise ineffective
         assistance of trial counsel claims on direct appeal; and

   (8)   ineffective assistance of appellate counsel for failure to communicate with
         Petitioner.

## III. DISCUSSION

### A.   Applicable Law

   "Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d). The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

### 1.   *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing – a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

### 2.   *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state

9

courts have the first opportunity to decide a petitioner's claim. <u>Rose v. Lundy</u>, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." <u>Petrucelli v. Coombe</u>, 735 F.2d 684, 687 (2d Cir. 1984) (citing <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." <u>Galdamez v. Keane</u>, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

<u>Daye v. Attorney Gen. of State of N.Y.</u>, 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim

procedurally barred." <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation

omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the

State' within the meaning of 28 U.S.C. § 2254(b)." <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir.

1991). Such a procedurally barred claim may be deemed exhausted by a federal <i>habeas</i> court.

<u>See, e.g.</u>, <u>Reyes</u>, 118 F.3d at 139. However, absent a showing of either "cause for the procedural

default and prejudice attributable thereto," <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989), or "actual

innocence," <u>Schlup v. Delo</u>, 513 U.S. 298 (1995), the petitioner's claim will remain

unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise

its discretion to review and deny a mixed petition containing both exhausted and unexhausted

claims, if those unexhausted claims are "plainly meritless." <u>Rhines v. Weber</u>, 544 U.S. 269, 277

(2005); <u>see</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied

on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."); <u>see also, e.g.</u>, <u>Padilla v. Keane</u>, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004)

(interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

   3.    ***Procedural Default***

Even where an exhausted and timely <i>habeas</i> claim is raised, comity and federalism

demand that a federal court abstain from its review when the last-reasoned state court opinion to

address the claim relied upon "an adequate and independent finding of a procedural default" to

deny it. <u>Harris</u>, 489 U.S. at 262; <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 730 (1991); <u>Ylst</u>

<u>v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 126

(2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on

state law. <u>Jimenez v. Walker</u>, 458 F.3d 130, 138 (2d Cir. 2006) (citing <u>Colman</u>, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).

### 4.   *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. <u>Williams v. Taylor</u>, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it]

decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

**B.**    **Analysis of Petitioner's Claims**

    **1.**    ***Claims Raised in § 440.10 Motion***

        **a.**    **Legally Insufficient Evidence to Support the Depraved Indifference Murder Conviction (Claim 6)**[11]

On direct appeal and in his § 440.10 motion, Petitioner challenged his conviction on the ground that the evidence was legally insufficient to support a conviction for depraved indifference murder.  Specifically, Petitioner argued that changes to New York's depraved indifference murder law, which occurred after the jury reached its verdict, apply to his case. Based upon these changes, Petitioner argued that the evidence adduced at trial was insufficient to support a finding that he acted with a depraved indifferent mental state.  (See Pet'r Mem., at 23-31; see also Br. of the Def.-Appellant, at 22-30; Mem. of Law in Supp. of Mot. to Vacate J. of

---

[11] For organizational purposes, I identify Petitioner's claims as I have numbered them in Section II(F)(2) above.

Conviction, at 11-19).  Respondent contends, in part, that this claim is procedurally barred.  (See Resp't Mem., at 14-26).

The trial court's written decision on Petitioner's motion to vacate the judgment of his conviction represents the last-reasoned state court decision to address this claim.  See Ylst, 501 U.S. at 803.  It is clear that the court denied the claim pursuant to N.Y. Crim. Proc. Law § 440.10(2)(a)[12] on the grounds that it was previously raised and determined on the merits on direct appeal.[13]  (May 23, 2007 Decision & Order, at 2).  However, I do not find that a state court's reliance on § 440.10(2)(a) constitutes an "adequate" procedural ground that precludes this Court from *habeas* review.  By the statute's own language, a prior decision on the claim must have already been made.  See, e.g., Guzman v. Couture, 2003 WL 165746, at *11 (S.D.N.Y. Jan. 22, 2003) (internal quotation omitted) ("A dismissal under § 440.10(2)(a) is not based on any procedural default.  To the contrary, it is premised on a prior decision."); see also Garner v. Superintendent of Upstate Corr. Facility, 2007 WL 2846907, at *20-21 & n.9 (N.D.N.Y. Sept. 26, 2007) (noting disagreement among courts within the Second Circuit and collecting cases).[14]  Accordingly, I review the claim as it was addressed in the prior decision.

It is clear from the Second Department's written decision that it actually relied on New

---

[12] "[T]he court must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment."  N.Y. Crim. Proc. Law § 440.10(2)(a).

[13] The opinion reads, in pertinent part: "The defendant's contention that the evidence was legally insufficient to establish that he committed the crime of depraved indifference murder must also be summarily denied.  The Appellate Division, Second Department has already determined that the evidence was legally sufficient to support the defendant's conviction (see CPL 440.10(2)(a) . . . )."  (May 23, 2007 Decision & Order, at 2 (internal citation omitted)).

[14] Copies of unreported cases cited herein will be mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

14

York's contemporaneous objection rule in denying this claim as unpreserved for appellate review.[15] Vinson, 794 N.Y.S.2d at 920. While the court went on to also deny the claim on the merits, the court's primary reliance on the state procedural law constitutes an independent and adequate ground for its decision. See Harris, 489 U.S. at 264 n.10 (state court decision that relies on a procedural rule to dismiss a claim, but which, in the alternative, also proceeds to dismiss the claim on the merits, relies on the independent state law ground for dismissal); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not preserved for appellate review" and then rules "in any event" that the

_____

[15] The opinion reads, in pertinent part:

> The defendant's contention that the evidence was legally insufficient to establish that he committed the crime of murder in the second degree is unpreserved for appellate review (see CPL 470.05(2) . . . ). In any event, viewing the evidence in the light most favorable to the prosecution . . . , we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.

Vinson, 794 N.Y.S.2d at 920 (internal citation omitted). The court's citation to N.Y. Crim. Proc. Law § 470.05(2) reveals that it relied on New York's contemporaneous objection rule.

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

N.Y. Crim. Proc. Law § 470.5(2). Under this section, "an objection to a ruling or instruction of a criminal court must be raised contemporaneously with the challenged ruling or instruction in order to preserve the objection for appellate review." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005). In addition, the objection "must also be made with sufficient specificity to enable the trial court to respond." Id. I note that, although a legally insufficient evidence argument was raised in the motion to set aside the jury's verdict, a review of that motion reveals that the argument was premised upon different grounds. Specifically, the § 330.30 motion argued that the evidence adduced at trial was legally insufficient to support the conviction because it failed to establish that Petitioner was the person who attacked the brothers. (See Ex. 2, at 8-12 (unpaginated)). It did not address mental culpability.

claim also fails on its merits, the claim rests on the adequate and independent state law rule

which precludes federal *habeas* review); see also Wainwright v. Sykes, 433 U.S. 72, 86 (1977)

(contemporaneous objection rule constitutes adequate procedural ground for dismissal); Bossett

v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (same).  Accordingly, this Court is precluded

from further review of Claim 6.

      Petitioner asserts ineffective assistance of trial counsel as cause for this default.  (See

Pet'r Mem., at 15, 20-21, 28).  Specifically, Petitioner argues that Keesee was deficient for

failing to move for a trial order of dismissal and successfully preserving this claim for appeal.

Cause may only be demonstrated by showing "that some objective failure external to the defense

impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477

U.S. 478, 488 (1986).  The failure "must be something *external* to the petitioner, something that

cannot fairly be attributed to him." Coleman, 501 U.S. at 753 (emphasis in original).  Attorney

error may establish cause if it constitutes ineffective assistance of counsel.  Aparicio v. Artuz,

269 F.3d 78, 91 (2d Cir. 2001).  However, as discussed below, Petitioner cannot establish that

trial counsel was ineffective because that claim (Claim 5) is also procedurally defaulted.

Moreover, as discussed below, Petitioner cannot successfully circumvent the procedural default

applicable to Claim 5 because he cannot establish cause and show that appellate counsel was

ineffective for failing to raise Claim 5 on direct appeal (Claim 7).  Accordingly, Claim 6 must be

denied as procedurally barred.

      **b.**    **Ineffective Assistance of Trial Counsel Claims (Claims 1-5)**

      Petitioner asserts he was denied the right to the effective assistance of trial counsel due to

certain conduct by Scott and Keesee.  Specifically, Petitioner argues Scott was ineffective for (1)

failing to move to dismiss the indictment for charging "twin counts" with inconsistent mental

16

states, *i.e.*, intentional murder and depraved indifference murder, (see Pet'r Mem., at 8, 12-14),

(2) failing to move to dismiss the indictment on the ground of legally insufficient evidence, (see

id. at 8), and (3) failing to communicate a plea offer of five-to-ten years to Petitioner, (see id. at

8, 12-14).  He also argues Keesee was ineffective for (4) failing to investigate, interview, and

call witnesses to testify, (see id. at 12-13, 14-15), and (5) failing to move for a trial order of

dismissal on the murder charge, (see id. at 9, 12-13, 15-17, 20-21).  Respondent contends that the

claims are procedurally barred and otherwise meritless.  (See Resp't Mem., at 1-13; Resp't

Mem. of Law in Response to Pet'r Am. Pet. (hereinafter "Resp't Am. Mem."), at 1-9 (Docket

No. 20)).

It is clear from the trial court's written decision and order that it denied Claims 1, 2, and

5 pursuant to N.Y. Crim. Proc. Law §§ 440.10(2)(c) and 440.30(2).[16]  It is also clear from the

decision that it denied Claim 3 pursuant to § 440.30(4)(b).[17]  It is not clear on which basis the

---

[16]

> [T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient
> facts appear on the record of the proceedings underlying the judgment to have
> permitted, upon appeal from such judgment, adequate review of the ground or issue
> raised upon the motion, no such appellate review or determination occurred owing
> to the defendant's . . . unjustifiable failure to raise such ground or issue upon an
> appeal actually perfected by him.

N.Y. Crim. Proc. Law § 440.10(2)(c).  "If it appears by conceded or uncontradicted allegations
of the moving papers or of the answer, or by unquestionable documentary proof, that there are
circumstances which require denial thereof pursuant to . . . , the court must summarily deny the
motion. . . . "  Id. § 440.30(2).

[17] "Upon considering the merits of the motion, the court may deny it without conducting
a hearing if . . . [t]he motion is based upon the existence or occurrence of facts and the moving
papers do not contain sworn allegations substantiating or tending to substantiate all the essential
facts . . . ."  N.Y. Crim. Proc. Law § 440.30(4)(b).

court denied Claim 4.[18]

### i.    *Claims 1, 2, and 5*

It is well-settled that, where a claim is sufficiently based in the record, a state court's

reliance on § 440.10(2)(c) constitutes an independent and adequate state law ground that

precludes a federal court from further *habeas* review.  See, e.g., Murden v. Artuz, 497 F.3d 178,

195-96 (2d Cir. 2007).  In this case, Claims 1, 2, and 5 are record-based claims that challenge the

failure by Petitioner's attorneys to make certain objections to the indictment and at the close of

evidence.  Accordingly, the state court's reliance on § 440.10(2)(c) to deny these claims

precludes this Court from further review absent a showing of cause and prejudice or a

fundamental miscarriage of justice.  See, e.g., id.; Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir.

2003).

Petitioner asserts ineffective assistance of appellate counsel as cause to circumvent this

default.  (See, e.g., Pet'r Mem., at 32-36).  However, as addressed below, appellate counsel did

not provide ineffective assistance.  Accordingly, Claims 1, 2, and 5 must be denied as

procedurally barred.

### ii.    *Failure to Communicate Plea Offer (Claim 3)*

---

[18] The opinion reads, in pertinent part:

> CPL 440.10(2)(c) and 440.30(2) mandate the summary dismissal of the
> majority of the defendant's ineffective assistance of counsel claims. His contentions
> that his counsel failed to raise objections and move for a trial order of dismissal are
> cognizable in the trial record and should have been raised on direct appeal . . . .
> Furthermore, the defendant's contention that his attorney failed to advise him of a
> plea offer lacks merit. His papers do not contain sworn allegations substantiating or
> tending to substantiate that claim (see CPL 440.30(4)(b) . . . ).

(May 23, 2007 Decision & Order, at 2 (internal citations omitted)).

"Courts in this judicial district disagree concerning whether the denial of a motion pursuant to CPL § 440.30(4) is an 'adequate and independent' state procedural bar, thus precluding habeas corpus relief, or a decision on the merits." Edwards v. Mazzuca, 2007 WL 2994449, at *15 (S.D.N.Y. Oct. 15, 2007) (internal citations omitted); see also, e.g., Lopez v. Ercole, 2010 WL 1628994, at *18-19 (S.D.N.Y. Apr. 21, 2010) (collecting cases). Because the statute specifically states that the court may only deny the motion after considering its merits, I agree with those courts who find that this statute is not a procedural bar to *habeas* review. See, e.g., Lopez, 2010 WL 1628994, at *18-19 (collecting cases); Edwards, 2007 WL 2994449, at *15 (same). Accordingly, I address the merits of the claim under AEDPA's deferential standard of review.

The Counsel Clause of the Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has construed this clause to afford criminal defendants the right to the *effective* assistance of counsel. See McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). A petitioner's ineffective assistance of counsel claim will succeed on the merits if the petitioner proves (1) that counsel's representations "fell below an objective standard of reasonableness," as measured under "prevailing professional norms," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

*Habeas* petitioners bear the burden of proving both prongs of the Strickland test. He or she must therefore prove that his or her attorney's actions were objectively unreasonable as well as that he or she was prejudiced to the extent that there exists a reasonable probability that the

19

result of the proceeding would have been different. Strickland, 466 U.S. at 689, 693.  To show

that an attorney's conduct was unreasonable, the petitioner must overcome "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. at 689.  Additionally, a "fair assessment of attorney performance requires that

every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." Id.  Because a petitioner may succeed only by proving both Strickland

prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address

both components of the inquiry if the defendant makes an insufficient showing on one." Id. at

697.

      An attorney's failure to communicate and advise a client adequately regarding the

existence or the terms of a plea offer, or the maximum sentence faced if convicted after trial,

may constitute ineffective assistance. See, e.g., Cullen v. United States, 194 F.3d 401, 404 (2d

Cir. 1999) ("there can be no doubt that counsel must always communicate to the defendant the

terms of any plea bargain offered by the prosecution"); United States v. Gordon, 156 F.3d 376,

380 (2d Cir. 1998) (per curiam) (internal quotation omitted) ("knowledge of the comparative

sentence exposure between standing trial and accepting a plea offer will often be crucial to the

decision whether to plead guilty"); Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996)

(quotation omitted) (emphasis in original) ("counsel may and *must* give the client *the benefit of

counsel's professional advice*" as to the decision of whether or not to accept a plea offer); see

also Hill v. Lockhart, 474 U.S. 52, 58 (1985) (Strickland analysis applies to such situations).  To

prevail on this ground upon *habeas* review, a petitioner "must show that (1) the attorney failed to

communicate a plea offer or failed to provide adequate advice about the plea and sentencing

exposure, and (2) there is a reasonable probability that but for the attorney's deficient performance, the defendant would have accepted the plea offer." Faulkenson v. Conway, 2007 WL 160926, at *11 (E.D.N.Y. Jan. 10, 2007) (citing Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000)).

Here, Petitioner's claim that counsel never informed him of a five-to-ten year plea offer is contradicted by the record. Transcripts reflect that, in the presence of Petitioner, Keesee informed the court that he communicated this offer to his client. (June 12, 1998 Tr., at 2-3 (Docket No. 23)).[19] The record also shows that Petitioner confirmed to the court that Keesee's representation was accurate, that Petitioner affirmatively and repeatedly rejected this offer, and that Petitioner expressed his desire to proceed to trial. (Id. at 3-4). I also note that during this proceeding, the court advised Petitioner of his maximum sentencing exposure if he were to be found guilty by the jury. (Id. at 3-4). Accordingly, the state court's denial of this claim did not unreasonably apply Strickland.

### iii.   *Failure to Interview and Call Witnesses (Claim 4)*

---

[19] Respondent states that its records reveal this plea offer was first extended to Petitioner on November 19, 1997 and that the case was adjourned until December 1, 1997 to allow Petitioner time to consider the offer. (See Resp't Am. Mem., at 6-7). By letter dated February 15, 2011, Respondent states that its memorandum in opposition to the amended petition should be corrected to read that the offer was first extended on November 17, 1997 – not November 19, 2011. (Docket No. 25). Respondent also states that the transcripts from the November 17, 1997 and December 1, 1997 proceedings no longer exist and that the court reporter who transcribed them has retired. (Id.) Respondent has filed transcripts from June 12, 1998 in which the five-to-ten year offer was again discussed in open court.

By letter dated February 26, 2011, Petitioner states that the June 12, 1998 transcripts are inaccurate. (Docket No. 27). However, Petitioner's assertion fails to overcome the "presumption of regularity that attaches" to a certified court reporter's transcripts. Bankhead v. LaVallee, 430 F. Supp. 156, 159 n.5 (E.D.N.Y. 1977) (collecting cases). Accordingly, I agree with Respondent that the June 12, 1998 transcripts sufficiently establish that Petitioner was advised of, and rejected, this five-to-ten year offer.

Although the trial court's written decision specifically identified all of the other claims raised by Petitioner in his § 440.10 motion, it did not specifically mention the claim that Keesee failed to interview or call witnesses. (See May 23, 2007 Decision & Order, at 2). This decision constitutes a denial on the merits for purposes of AEDPA. Fluellen v. Walker, 41 Fed. Appx. 497, 50 n.1 (2d Cir. 2002); see also, e.g., Wilson v. Phillips, 2010 WL 545862, at *10 (E.D.N.Y. Feb. 16, 2010) (citing Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005)) (state court decision stating that "most" of the ineffective assistance of counsel claims were denied pursuant to § 440.10(2)(c) did not constitute independent state procedural ground upon which federal court could deny claim, and therefore review under AEDPA was warranted).

Petitioner argues that Keesee was ineffective because there were additional witnesses who, if contacted, would have testified that Petitioner was not involved in the fight. (See Pet'r Mem., at 7-8, 12, 15). This claim does not warrant *habeas* relief. First, Petitioner cannot show that counsel's conduct was deficient. At trial, four witnesses testified for the defense that Petitioner was not involved in the fight. (See Pet'r Mem., at 6). It is well-established that an attorney's failure to call additional, cumulative witnesses may constitute a sound tactical decision. See, e.g., Grant v. Ricks, 151 Fed. Appx. 44, 45 (2d Cir. 2005) (summary order) (trial counsel's decision not to call cumulative witnesses was sound trial strategy); Archer v. Fischer, 2009 WL 1011591, at *31-32 (E.D.N.Y. Apr. 13, 2009), aff'd, 619 F.3d 187 (2010); cert. denied, 131 S.Ct. 611 (2010) (state court's denial of ineffective assistance of counsel claim for failure to call cumulative witnesses did not unreasonably apply Strickland). Additionally, by affidavit, Keesee stated that he did attempt to interview one additional witness but stated that the witness continuously refused to communicate with him. (See Ex. 2 (discussing "Willie Green")). It is

22

also well-established that an attorney's failure to call an uncooperative witness is a reasonable decision. See, e.g., Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) ("[o]ur deference is particularly apt where, as here, an attorney decides not to call an unfriendly witness to the stand and has precious little means of determining how the witness might testify"); Robles v. Superintendent of Elmira Facility, 2007 WL 2600857, at *6-7 (S.D.N.Y. Aug. 30, 2007) (trial counsel's decision not to call uncooperative or antagonistic witness constitutes reasonable and strategic decision). Petitioner's assertions to the contrary do not render counsel's strategic decisions deficient. See Strickland, 466 U.S. at 689 (decisions that "might be considered sound trial strategy" do not reflect ineffective assistance of counsel); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) ("[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial"); United States v. Helgesen, 669 F.2d 69, 72 (2d Cir. 1982) (explaining the "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"); Singleton v. Duncan, 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006) (citing Jones v. Barnes, 463 U.S. 745, 752 (1983)) ("a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy").

Second, Petitioner fails to show that the result of the trial would have been different had additional witnesses testified. As discussed above, Petitioner and three others already testified that Petitioner was not involved in the crime. See, e.g., Archer, 2009 WL 1011591, at *33 ("the failure to call certain witnesses would not have affected the outcome of the trial given that their alleged testimony would have been cumulative of the other defense witnesses"). Accordingly, the state court's denial of this claim did not unreasonably apply Strickland.

### 2.   *Claims Raised in* **Error Coram Nobis** *Petition*

23

a.   **Ineffective Assistance of Appellate Counsel for Failure to Raise**

   **Ineffective Assistance of Trial Counsel Claims on Direct Appeal**

   **(Claim 7)**

Petitioner asserts he was denied the right to the effective assistance of appellate counsel because of counsel's failure to raise the ineffective assistance of trial counsel claims identified above. (See Pet'r Mem., at 32-36). As discussed below, the state court's denial of Claim 7 was not an unreasonable application of Strickland and accordingly Claim 7 must be denied.[20] Additionally, because Petitioner cannot show that appellate counsel's assistance was ineffective, he cannot establish cause to circumvent the procedural bars identified in the claims above.

   i.   *Failure to Raise Claims 3 and 4*

As discussed above, the ineffective assistance of trial counsel claims identified in Claim 3 (failure to communicate a plea offer) and Claim 4 (failure to call additional witnesses) are each without merit. An appellate counsel does not have an obligation to raise claims which clearly lack merit. See, e.g., Warren v. Napoli, 2009 WL 2447757, at *17 (S.D.N.Y. Aug. 10, 2009) (citing Jones, 463 U.S. at 751-53). Petitioner also cannot show that the result of the proceeding would have been different had these meritless claims been argued. The state court therefore did not unreasonably apply Strickland in denying these aspects of Claim 7.

   ii.   *Failure to Raise Claim 1*

Petitioner is unable to show that appellate counsel was deficient or that the result of the proceeding would have been different had he argued that trial counsel was ineffective for failing

---

   [20] Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to claims alleging ineffective assistance of appellate counsel. See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

to move to dismiss the indictment on the ground that contained counts with different mental states, *i.e.*, depraved indifference murder and intentional manslaughter.[21]  "An indictment is not defective simply because it charges a defendant with alternative offenses.  Indeed, New York's Criminal Procedure Law specifically contemplates the possibility of being charged with inconsistent offenses.  What it protects against is a conviction on inconsistent offenses."  Whitfield v. Ricks, 2006 WL 3030883, at *2 (S.D.N.Y. Oct. 24, 2006); see also, e.g., Haynes v. Ercole, 2011 WL 2341277, at *25 (E.D.N.Y. June 8, 2011); People v. Suarez, 6 N.Y.3d 202, 215 (2005) (per curiam) (emphasis added) (noting only that "twin-count indictments – charging both intentional homicide and depraved indifference murder – should be *rare*").  "Two counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other."  N.Y. Crim. Proc. Law § 300.30(5).  Under New York law, such inconsistent counts may still be submitted to a jury so long as the court ensures that the counts are considered in the alternative.

> If an indictment contains two inconsistent counts, the court must submit [to the jury] at least one thereof.  If a verdict of guilty upon either would be supported by legally sufficient trial evidence, the court may submit both counts *in the alternative* and authorize the jury to convict upon one or the other depending upon its findings of fact.  In such case, the court must direct the jury that if it renders a verdict of guilty upon one such count, it must render a verdict of not guilty upon the other.

Id. § 300.40 (5) (emphasis added).

In this case, it is clear that the indictment was not defective for charging both a count of intentional manslaughter and a count of depraved indifference murder.  Moreover, I note that the court's charge properly instructed the jury to consider those counts in the alternative.  (See Tr., at

---

[21] I note that Petitioner has not raised an argument contesting the propriety of the indictment or the conviction with respect to the charge of gang assault in the first degree.

1199-1200; see also id. at 1080-84).  Accordingly, appellate counsel had no obligation to raise

this clearly meritless claim and Petitioner cannot show that the result of the proceeding would

have been different had he done so.  The state court therefore did not unreasonably apply

Strickland in denying this portion of Claim 7.

### iii.    *Failure to Raise Claim 2*

Petitioner is unable to show that appellate counsel was ineffective for failing to argue that

Scott was ineffective for failing to move to dismiss the indictment on the ground that the

evidence presented to the grand jury was legally insufficient to support the counts of intentional

manslaughter and depraved indifference murder.

As a threshold matter, I note that Petitioner was acquitted of the intentional manslaughter

conviction.  Accordingly, that portion of the claim is moot.  In any event, the record reflects that

Scott *did* in fact move to dismiss the indictment on this ground.  (See Omnibus Motion, at ¶ 2

(Docket No. 28); Affirmation of William Scott, Esq., at 13 (Docket No. 28)).[22]  As such,

appellate counsel had no duty to raise this claim on direct appeal.  The state court's denial of this

aspect of Claim 7 was not an unreasonable application of Strickland.

### iv.    *Failure to Raise Claim 5*

Petitioner alleges that the evidence adduced at trial evinced only an "intentional" *mens*

*rea* – the intent to seriously injure – and asserts that this is wholly distinct from the "depraved

indifferent" mental state necessary for a conviction of depraved indifference murder.  Petitioner

argues that appellate counsel was ineffective for failing to argue on direct appeal that Keesee

---

[22] The record also reflects that the court reviewed the grand jury minutes and specifically
found that the evidence presented was legally sufficient to support the elements of each offense.
(See Feb. 26, 1998 Decision & Order, at 2-4 (Docket No. 28)).

was deficient for failing to move for a trial order of dismissal on this basis.[23]

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307, 315 (1979) (internal quotation omitted). However, on *habeas* review, a claim of legally insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. A *habeas* petitioner, therefore, "bears a very heavy burden" to show that no rational jury could have found the substantive elements of the offense beyond a reasonable doubt and succeed on such a claim. Fama, 235 F.3d at 811 (internal quotation omitted). In addition, "when it considers the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." Id.

At the time of Petitioner's trial, the interpretation of the elements of depraved indifference murder was based on the standard set forth in People v. Register, 60 N.Y.2d 270, 276 (1983).[24] In that case, the Court of Appeals specifically rejected an argument that the

---

[23] To recap, as identified above, Petitioner initially raised the legally insufficient evidence claim in his § 440.10 motion and on direct appeal (Claim 6). The trial court denied the § 440.10 motion because the Second Department had already determined the matter on direct appeal. The Second Department denied the claim due to trial counsel's failure to comply with the state's contemporaneous objection rule. As cause to circumvent this procedural default, Petitioner asserts ineffective assistance of trial counsel. However, as identified above, that record-based claim was also denied by the trial court for Petitioner's failure to raise it on direct appeal (Claim 5). To circumvent *that* procedural default, Petitioner alleges ineffective assistance of appellate counsel.

[24] Register was also expressly reaffirmed, after Petitioner's trial but before appellate counsel filed the appellate brief, in 2002. People v. Sanchez, 98 N.Y.2d 373 (2002). Specifically, the Court of Appeals held that the elements included: (1) the defendant recklessly engaged in conduct, (2) that created a grave risk of death to another, (3) the conduct caused the

27

element of "depraved indifference" should be used to establish mental culpability. See id. at 275-76. Instead, the Court held that the *mens rea* of the offense constituted recklessness and that the "depraved indifference" element required an objective, degree-of-risk analysis of the factual circumstances involved. Id. at 276.

After Petitioner's trial, the holding in Register was slowly chipped away by a quartet of cases decided by the New York Court of Appeals. On June 10, 2003, the Court held in People v. Hafeez that, where the evidence showed that a defendant plotted revenge, laid in wait, and stabbed a victim, the act "was a quintessentially intentional attack," and therefore legally insufficient to support a conviction for depraved indifference murder. Hafeez, 100 N.Y.2d 253, 258 (2003). On March 25, 2004, the Court held in People v. Gonzalez that, where a defendant aimed a gun and "shot the victim once in the chest, once in the face from 6 to 18 inches away, six times in the back of the head from approximately six inches away, and twice in the back," the evidence showed only a specific intent to kill, and therefore could only establish intentional – not depraved indifference – murder. Gonzalez, 1 N.Y.3d 464, 467 (2004). On October 19, 2004, the Court specifically held in People v. Payne that, in the absence of special circumstances, "one-on-one shootings or knifings" almost never qualified as depraved indifference murders due to the fact that such actions circumstantially show the specific intent to kill. Payne, 3 N.Y.3d 266, 272 (2004). On December 22, 2005, the Court acknowledged in People v. Suarez that it was "depart[ing] slightly from the Register formulation . . . in that [it made] clear that the additional requirement of depraved indifference murder has meaning independent of the gravity of the risk." Suarez, 6 N.Y.3d at 215.

---

death of another, and (4) under circumstances evincing a depraved indifference to human life. Register, 60 N.Y.2d at 276.

> Depraved indifference murder is not a lesser degree of intentional murder. . . . [S]omeone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies. . . . Thus, one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, is guilty only of manslaughter in the first degree. Otherwise, every intentional manslaughter would also establish depraved indifference murder – a result plainly at odds with the discrete classifications set forth in the statute. Since a defendant who intends to injure or kill a particular person cannot generally be said to be "indifferent" – depravedly or otherwise – to the fate of that person, we underscore what we said in Payne: "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."

Id. at 211-12. The Court later explained that it "stopped short" of saying in Suarez that "depraved indifference to human life is a culpable mental state," independent of "recklessness." People v. Feingold, 7 N.Y.3d 288, 294 (2006). Register was eventually overturned on July 5, 2006 in People v. Feingold – which was decided *after* Petitioner's conviction became final.[25] Later, the Court explained that the depraved indifference law had changed at some point following its decision in Hafeez and that this change did not apply retroactively to cases that became final before that change. Policano v. Herbert, 7 N.Y.3d 588, 603-04 (2006); see also id. at 603 (the "quartet of cases" in Hafeez, Gonzalez, Payne and Suarez "represent[s] a perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in Register and Sanchez"). However, the Court did not identify the precise point in time in which the law "passed the point of no return." Id.; see People v. Baptiste, 853 N.Y.S.2d 719, 720 (App. Div. 2008), lv. to appeal denied, 10 N.Y.3d 932 (2008). The Appellate Division, Third

---

[25] A judgment of conviction becomes final when the time to file a petition for a writ of *certiorari* to the United States Supreme Court has expired, or, ninety days after the New York Court of Appeals denies leave to appeal. See 28 U.S.C. § 2101(d); Sup. Ct. R. 13.1; see, e.g., Brown v. Grenier, 409 F.3d 523, 524 n.3 (2d Cir. 2005). In this case, the Court of Appeals denied Petitioner leave to appeal on December 23, 2005 -- one day after it announced its decision in Suarez – and Petitioner's conviction became final ninety days thereafter – prior to the July 5, 2006 decision in Feingold.

Department subsequently answered that question and held that "the law changed on October 19, 2004, when the Court decided <u>People v. Payne</u>." <u>Baptiste</u>, 853 at 720. The Third Department reasoned that after <u>Payne</u>, "depraved indifference murder may be found only where a defendant's conduct endangers other indiscriminately *or in narrowly defined factual circumstances evincing uncommon brutality*." <u>Id.</u> at 727 (emphasis added); see also, e.g., <u>Pinero v. Conway</u>, 2010 WL 6397588, at *9 (S.D.N.Y. Dec. 13, 2010), <u>Report & Recommendation adopted</u>, 2011 WL 1226300 (S.D.N.Y. Mar. 31, 2011).

In this case, Petitioner cannot establish the first prong of <u>Strickland</u>. It is clear that appellate counsel "does not have a duty to advance every nonfrivolous argument," and that the failure to raise a legal argument on appeal will constitute ineffective assistance only where the petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo</u>, 13 F.3d at 533 (internal citations omitted); <u>see also</u> <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 317 (2d Cir. 2001) (no duty to raise every non-frivolous argument on appeal). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute . . . constitutionally deficient" performance of appellate counsel. <u>Smith v. Murray</u>, 477 U.S. 527, 535 (1986) (internal citations and quotation marks omitted). The Supreme Court has recognized the "importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most on a few key issues." <u>Jones</u>, 463 U.S. 745, 751-52 (1983). Accordingly, relief may only be granted where the defendant shows that appellate counsel failed to raise a "significant and obvious" issue, and that a reasonable probability exists that the result of the proceeding would have been different had that issue been raised. <u>Mayo</u>, 13 F.3d at 533.

Here, appellate counsel did not ignore a significant claim by declining to argue that, in

1998, trial counsel was unreasonable for failing to predict the later change in the depraved indifference murder law and preserve the issue through contemporaneous objection. The fact that appellate counsel, when he filed the appellate brief in 2004 – and after Hafeez, Gonzalez, and Payne were already decided – identified the changing interpretation of the law does not, contrary to Petitioner's argument, (see Pet'r Mem., at 22-29), mean that *trial* counsel was ineffective. Indeed, the 1998 trial was more than five years before Hafeez. "An attorney is not required to forecast changes or advances in the law." Sellan, 261 F.3d at 315 (internal quotation omitted); see also Cruz v. Conway, 2007 WL 1651855, at *7 (E.D.N.Y. June 6, 2007) (trial "[c]ounsel cannot be faulted for failing to anticipate the subsequent shift in New York['s depraved indifference murder] law"). Accordingly, it was not unreasonable for appellate counsel to refrain from arguing that trial counsel rendered ineffective assistance in this respect. See, e.g., Soto v. Conway, 565 F. Supp.2d 429, 436 (E.D.N.Y. 2008) (emphasis in original) (appellate counsel was not deficient for failing to argue that trial counsel was ineffective during trial that occurred prior to Hafeez, as "it is unlikely that trial counsel's failure to preserve this claim *at that time* would have constituted ineffective assistance").

Petitioner is also unable to prove the second prong of Strickland. Petitioner cannot show there exists a reasonable probability that, had trial counsel preserved this argument, Petitioner would not have been convicted of the murder charge or that his conviction would have been overturned on appeal. First, it is clear that at the time of Petitioner's 1998 trial, this legal insufficiency argument would not have been successful under the law of New York as it stood then. See Cruz, 2007 WL 1651855, at *7 (ineffective assistance of trial counsel claim for failing to object to legal insufficiency of evidence during 1999 trial denied because "such an objection would have been unsuccessful under the law of New York in effect at the time").

31

Second, under the law that existed at the time Petitioner's conviction became final, proof of depraved indifference as a culpable mental state was not required because his conviction became final prior to Feingold. Under the law in existence at the time his conviction became final – and indeed, even *after* Feingold – the evidence presented was in fact legally sufficient to support a conviction of depraved indifference murder. Petitioner did not lay in wait or plot revenge like the defendant in Hafeez. Nor did the victim die as a result of several, point-blank gunshots like those in Gonzalez and Payne. In those cases, the Court of Appeals determined that such acts circumstantially infer only the intent to kill and thus normally preclude a murder conviction based upon any other *mens rea.* Such evidence is lacking in Petitioner's case. In addition, the series of kicks or stomps inflicted on the brothers in this case is not similar to the deadly weapons (guns and knives) used in the quartet which the Court of Appeals held normally also show only an intentional mental state. Lastly – and most importantly – Petitioner's conduct fits well within the factual circumstances that evince "uncommon brutality" which, even after Payne, Suarez, and even Feingold, is sufficient to support a conviction of depraved indifference murder. See Payne, 3 N.Y.3d at 271-72; see also, e.g., Baptiste, 853 at 727. At trial, evidence was presented to show that Petitioner participated in a surprised, unprovoked, mob-style attack for no apparent reason. Evidence was also presented to show that Petitioner used only his fists and feet to inflict substantial harm to the two unarmed strangers. Accordingly, a rational jury could find these actions to be "marked by an *uncommon brutality* – coupled not with intent to kill, . . . but with depraved indifference to the victim's plight." Payne, 3 N.Y.3d at 271 (emphasis added). Indeed, a review of the relevant caselaw reveals that similar conduct has been held sufficient to support depraved indifference murder convictions, even under the current law, due to the conduct's uncommon brutality. See, e.g., Farino v. Ercole, 2009 WL 3232693, at *18

32

(E.D.N.Y. Sept. 30, 2009) (evidence was legally sufficient to prove depraved indifference where petitioner inflicted a "[a] severe beating, [which] unlike repeated shooting or stabbing (or in some cases, both), is not certain in all circumstances to cause death"); Archer, 2009 WL 1011591, at *16 (absence of a personal dispute between petitioner and victim supports position that violent acts were inflicted with depraved indifference rather than specific intent to harm); Saxon v. Ercole, 2008 WL 3446488, at *28-29 (S.D.N.Y. Aug. 12, 2008) (depraved indifference murder conviction based on legally sufficient evidence where petitioner participated with one other in unprovoked, severe beating where victim was punched, kicked, stomped on, and then left to die); People v. James, 2007 WL 959712, at *4 (N.Y. Sup. Ct. Mar. 30, 2007) (even after Feingold, evidence was legally sufficient to convict of depraved indifference murder where defendant showed uncommon brutality by beating victim for several minutes and then strangling her). This portion of Claim 7 must therefore be denied. Additionally, Petitioner fails to circumvent the procedural defaults identified in Claims 1, 2, and 5 above. Because Petitioner cannot show that appellate counsel was ineffective, the state court's denial of those record-based claims pursuant to § 440.10(2)(c) constitutes an independent and adequate state procedural bar that precludes this Court from further review. Finally, because Petitioner has failed to circumvent the procedural bar applicable to Claim 5, the state court's denial of Claim 6 pursuant to New York's contemporaneous objection rule also precludes this Court from further review.

### b.  **Ineffective Assistance of Appellate Counsel for Failure to Consult with Petitioner (Claim 8)**

Petitioner asserts he was denied the right to the effective assistance of appellate counsel due to counsel's failure to consult with Petitioner and learn that he wanted to raise on direct appeal the ineffective assistance of trial counsel claims identified above. (See Pet'r Mem., at

36).  However, "[a]lthough it may be desirable and productive, the Constitutional right to

effective assistance of counsel does not encompass the requirement that an attorney consult with

his client to discuss the alleged trial errors that his client wishes to pursue."  McIntyre v.

Duncan, 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005); see also, e.g., Warren, 2009 WL

2447757, at *18 (failure to discuss contents of appellate brief prior to filing does not warrant

*habeas* relief for ineffective assistance of counsel); Campbell v. Greene, 440 F. Supp.2d 125,

152 (N.D.N.Y. 2006) (no *per se* ineffective assistance of appellate counsel for failure to

communicate with client); Buitrago v. Scully, 705 F. Supp. 952, 955-56 (S.D.N.Y. 1989))

(same).  Moreover, as discussed above, Petitioner cannot establish that the result of the

proceeding would have been different had appellate counsel included such claims.  Accordingly,

the state court's denial of Claim 8 did not unreasonably apply Strickland.

## IV.  CONCLUSION

For the reasons set forth above, I conclude – and respectfully recommend that Your

Honor should conclude – that the petition be **DENIED**.  Further, because reasonable jurists

would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that

he was denied a constitutional right, I recommend that no certificate of appealability be issued.

See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties

shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written

objections to this Report and Recommendation.  Such objections, if any, shall be filed with the

Clerk of the Court with extra copies delivered to the chambers of The Honorable Vincent L.

34

Briccetti at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601,

and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: <u>July 11</u>, 2011
       White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Vincent L. Briccetti
United States Courthouse
300 Quarropas Street
White Plains, New York  10601

Jecoina Vinson, *pro se*
99-A-4341
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, NY 12788

John James Sergi, Esq.
Office of the Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601